www.spacecobusiness.com www.spacecobusiness.com 2013-14-32, Mr. Hjort, is it? Yes. May it please the Court, I'm Carl Hjort, I'm the General Counsel of Spaceco Business Solutions. And today we're here to talk about a jurisdictional issue. Mainly our contention that Mass Engineered is amenable to personal jurisdiction in Colorado for the torts of abusive process and malicious prosecution because they committed an intentional tort that was expressly aimed at a Colorado resident with knowledge that the brunt of the injury would be felt in Colorado. The Tenth Circuit recognized in Dudnikoff v. Chalk and Vermillion Fine Arts that economic damages accrued in Colorado constitutes an injury in Colorado for the purposes of determining personal jurisdiction. In that case, is that odds with the decisions that the District Court relied on in finding it lacked personal jurisdiction? I mean, whatever the Tenth Circuit stated in Dudnikoff was in the context of the facts there and the critical fact there was that the challenged conduct was specifically aimed at stopping a proposed sale that would occur in Colorado. Yes. And we don't have that. We have the situation of conduct that in fact took place in Texas and you rely on the second level economic effect felt by the resident of Colorado. And the various cases, starting with Wallace and so on, seem pretty repeatedly to say that second level effect, feeling the pain in your pocketbook wherever you live, which is always true, isn't enough. So can you address that? Well, I think that there are a couple of points on that. One is that I guess if you're going to have your sale canceled in Colorado, you are feeling the pain in Colorado. I mean, I think that there is that notion that it's kind of two sides of the same coin. If someone forgoes an economic transaction, they lose money. If someone is forced into paying for the defense of a frivolous lawsuit in Texas, we lose money. It's the same thing that's going on really right there. You don't just do sales in Colorado, right? Oh, no. You do them everywhere. Correct, yes. So in some ways the lawsuit was seeking to restrict activity of sales in Colorado, but it was also restricting sales everywhere. So it wasn't so Colorado specific as it was in Dudnikoff. Is that right? I suppose you could say that. I don't know where the Dudnikoff sale was directed to. I don't think it was an in-state transaction. I think it was an out-of-state transaction. They were trying to sell something out of their garage, and then they were blocked from doing that. Yes, yes. But the other point I wanted to make with regard to the cases such as the Wallace v. Herron and also the Allred v. Moore, those are, again, a Seventh Circuit and a Fifth Circuit decision. I think that you could also look at the other cases that we cited in the brief, at the Second and the Fourth Circuit, such as the Vishay Intertechnology and the MHA Financial Corp. And those cases come to an opposite conclusion in those circuits. So there seems to be a bit of a difference of opinion there. Can I just follow up on something that is related to what Judge Chen asked you? The Eastern District of Texas lawsuit that Mass Engineered filed against Spaceco, on its face, I'm assuming, was trying to stop or get damages for your company's activities wherever they took place, including in Colorado. But your claim of malicious prosecution and, indeed, abusive process seems to rest on the premise that that wasn't really what that suit was trying to do. It really wasn't about your activities because there's no way in the world they ever could have gotten that. It was frivolous from the get-go. I don't have a very focused question on that, but it seemed to me that your allegations may point against any effort to rely on the set of allegedly infringing activities that the Texas suit was against. Sure. Again, it was our position all along that the Eastern District of Texas case was frivolous. They sued 29 different defendants, the entire industry, basically. And their claim is that anybody who makes a device that supports more than one computer monitor owes them a royalty of 5.9%. And with the 29 defendants, all of us have very different products. There are literally probably 1,000 different permutations of these products with the way they're mounted, with the way that the engineering is basically implemented, how you'd have single support, multiple supports. So, yeah, it was our position that the claims could never be read as broadly as they do to encompass as many people. And it was really just an effort to get a royalty cost of defense type of settlement before taking it to trial, which I think is borne out by the way the thing went. It sat around for four years, and then 45 days before the Markman hearing, they decided to dismiss the suit rather than go through with claim construction. And just as a technical matter, did the two sides have a stipulation that claims and counterclaims would both be dismissed without prejudice? Is that a technical matter? Yes. So, again, I think the other thing we have to consider is also the abuse of process claim. And I think it's an independent ground for jurisdiction. And what I would point there to was the act of service of process in Colorado. Did you raise that argument below? You pretty much mushed the two together, right? Well, I think- Just prosecution and abuse of process. Yes, well, they're separately alleged in the complaint. But specifically, I did not see that you citing to anything in the district court where you made the argument that process for the Texas case was served in Colorado and that is itself sufficient for personal jurisdiction. Or, indeed, as far as I can tell from the page you included in the joint appendix, your only lawyer's assertion about where the service of process was, in fact, completed was in the venue section of your brief, not in the personal jurisdiction section. Yes, I think that's true. I mean, I don't think there's any doubt that we were served in Colorado. I think that's basically agreed to at this point. So we're really focusing on whether you made the argument rather than presented the fact somehow. I think that since it's included in the amended complaint, I think it's a claim that has to be analyzed. I think we should have- My position was that Dudnikoff is enough to carry the day. But if we have alleged that there's abuse of process and if it's held that the act of service is enough to confer personal jurisdiction, I think the court has to just go there. But then again, the Winsk case goes against you. The Winsk, the memory crystal, yes. Well, I think that again is probably distinguishable because there you have the deposit of money into an account in London and then the fraudulent distribution of that money in London. So the tort really all did occur in London versus here where the damages accrued to us in Colorado. Do you agree that the Colorado long-arm statute reaches as far as due process permits? Yes, yes. Can I just ask on that? That means that the jurisdictional question here is a federal due process question. So I guess I'm confused why there would be any basis for certifying a question to the state courts when the question is a federal constitutional question. I think that the point of certification when I raise that would be this issue about whether the service of process would actually be an act that confers personal jurisdiction over the mass engineered. I think that question is open in Colorado. It hasn't been decided. There is that case that I pointed to from Massachusetts. But if Colorado's standard is whatever the federal constitution allows, Colorado courts have nothing authoritative to say on that. They, like all other courts, get to speak about the federal constitution but unlike on the question of state law where the state court does speak authoritatively, not on federal due process. Right. Well, I don't really know that it's necessary to certify the question, but I just put that in there as a possibility. Let me ask you a hypothetical. Let's assume you're from Denver. You're from Denver, right? I am from Denver. Okay. It's late Sunday night and you're sitting in a diner on the turnpike, really close to East Rutherford, New Jersey, and I'm from Seattle. I drove all the way out from Seattle to go to East Rutherford, New Jersey, and now I'm sitting next to you at the counter in the diner. It's late, late Sunday night. We get to talking and you know I'm from Seattle and I know you're from Denver and we're talking to each other and then words get exchanged and then all of a sudden you're not happy so you hit me over the head with your coffee cup and then I have to drive all the way home to Seattle. You didn't know it was a truck. No, but you know I'm from Seattle. So then I go to the hospital and I get my injuries taken care of out of my bank account in Seattle and you know I've never left the state of Washington except for visiting the Super Bowl in East Rutherford. Can I sue you in Washington for an intentional tort that occurred in Jersey? You did an intentional act. Yes, yes. It was directed towards the state of Washington because you knew I was part of Seahawk Nation and I had been living in Seattle and the brunt of the injury was because I had to pay money out of my bank account to recover from my injuries. I think those types of cases, you know, in personal injury are different in kind than what we talk about here where there's this kind of transitory, you know, there is no direct action. It's not like a car impact or something like that. So the answer is no. I can't sue you in Washington. I would say no. Okay. You're coming up to your rebuttal time. Do you want to save it or continue? I will reserve the rebuttal. Mr. Edmonds. Thank you, Your Honor. May it please the Court. What happened to your lawsuit? You had this big case, probably worked it up, 29 defendants. I was not with the firm that did that, but what I understand is that the firm that was handling it essentially disintegrated. The law firm? Yes. Disintegrated. Yes, and fallout between firm and client. The firm, as I would characterize it, the firm dumped the client and they had to dismiss the suits. Two of those suits are now reinstated in the Eastern District of Virginia and those are proceeding forward. But I don't think the implication that it's because the suits lacked merit or something was frivolous, I disagree with. We've assumed those facts for purposes of this because the Court assumes them to be true, but we disagree with that. Yes, Your Honor. The new suits in Virginia do not name Spaceco as a defendant. Is that right? Correct. I mean, as long as this action is pending, this is the first filed case. And the original Texas action did or did not include in either, as alleged infringing activity, sales that would take place or did take place in Colorado. The only allegation in the complaint would be sales in Texas because that would be necessary for personal jurisdiction for venue. But I take the Court's, I mean, presumably it's a nationwide company, so the infringement allegations would impact nationwide sales, including in Texas, including in California. So, with respect to the Dudinoff case, so let's go back to Calder v. Jones. And the Court's already hit the nail somewhat on the head. And Calder involves special circumstances. It has an expressly aimed test. And in that case, the actions, the intentional actions of the defendant were expressly aimed at California because it was aimed at Ms. Shirley Jones, it was drawn on California sources, and it was widely distributed in that state. In addition, there was knowledge that the brunt of the injury would be in California because Ms. Jones lived in California and because her entertainment industry was in California. Dudinoff was also, as the Court has pointed out, a case that had specialized facts, facts fairly similar to Calder v. Jones, in that they had stopped an eBay auction and effectively shut down an auction that was essentially taking place in the state where the Dudinoffs lived. The takeaway points from Calder and Dudinoff are that you have this expressly aimed test and that the state has to be the focal point of the purposeful efforts by the defendants. As the Court's already pointed out, case after case has held that simply suing someone in another state is not sufficient. Simply allegedly causing economic harm in the forum state is insufficient. And the Court's already pointed out... Can I just add, I guess I want to come back a little bit to what I asked you about the scope of the Texas action. If it seems likely that that action was in part about sales activity in Colorado, Spaceco's sales, at that point we're no longer talking about a kind of secondary effect on pocketbook which always exists wherever the person wearing the pocket lives. We're talking about actual sales activity in Colorado. Not only in Colorado, but including in Colorado. Well, I respectfully disagree. If that were the standard, then I think all these Court decisions would have a problem because if you're economically impacting a business, you're necessarily impacting its sales activity. I don't think any Court has gone that far. I think in Dudinoff, there was a specific action to stop a specific auction. In Calder, there was this specific nexus that this film was centered in California and it was filmed in California and the entertainment industry was in California and those are special cases. But if you look at the Wallace case, the Allred case, the Court's already mentioned, from the Fifth and Seventh Circuits, anytime you have a malicious prosecution allegation, that's going to have an economic impact on the business that it's directed at. I'd also point the Court to the Minor case, which is a district court within the Tenth Circuit, which I think is directly on point in terms of this. Counsel cited the Vishay case as support that simply filing a lawsuit against someone or allegedly serving someone is enough. The Vishay case doesn't actually say that. The Vishay case also involves much more extensive contacts. In that case, there were verbal contacts and written contacts back and forth that were deemed within the forum state. The process was served in Colorado, right? We've alleged there's no evidence of that and I've seen no evidence of that. Where else could it have been served, theoretically? It's not uncommon, Your Honor, that process isn't served when a patent infringement lawsuit is filed. When a patent infringement lawsuit is filed in the present times, the next day, numerous databases send out emails to subscribers, mostly law firms, that these are the patent infringement cases that were filed yesterday. It's very common for defendants to be contacted by the law firms and they will voluntarily approach the plaintiff and get a detention. I apologize, Your Honor. Pacer shows a, I forget what it's called, return of service of process or something specifically for Safeco, but it just has those words and that title. It doesn't have the underlying document. Is that consistent with what you just said about non-service of process? I don't know what to say. The problem is those aren't accessible on Pacer, at least to me. There's just an entry, so I don't know what it says. I'd say that to Judge Chin's point, though, in terms of what the district court was asked to address, the Safeco did not allege in its jurisdiction allegations that this was based upon a service of process and that that confers jurisdiction. I just want to know what you know. Did your client serve process in Colorado? I don't know. We do not have contact with the firm that was handling it. I was not involved. But irrespective of that, they didn't allege it. That's why the court didn't address it. Their jurisdiction allegations are in paragraph 15 of their complaint. The district court appropriately summed up what their jurisdiction allegations were. Judge Toronto correctly pointed out that the mention of service of process is in their venue allegations, not in their jurisdiction allegations. And as to the point, I don't think it was made here, it was made in their brief, that the district court didn't analyze all the facts. The district court analyzed all the facts that were brought forth to the district court. If you read the jurisdictional allegations in paragraph 15 of the amended complaint, they say that economic harm was caused in Colorado, therefore there's personal jurisdiction. And I just say that courts again and again have rejected that. The district court of Colorado has rejected that. The Tenth Circuit has rejected that. More is required. There has to be purposeful availment. There has to be a focal point. The Fifth Circuit has rejected that. The Seventh Circuit has rejected that. The Vishay case... It's not unanimous though, right? There's other courts that have gone the other way. I'd say as far as the circuits, I'm not aware of any that have gone the other way. Counsel cited the MH-8 opinion a moment ago and said it was a Fourth Circuit case. That's actually a district court case. It's not a Fourth Circuit case. The Vishay case, I don't see anything in Vishay that says that the service of process alone would be sufficient for jurisdiction. As I said, with Vishay, there were tortious interference and other things, claims at issue, and there were a number of other significant contacts. Fair enough, the totality of those contacts were sufficient to satisfy due process, but there's no statement that service process alone would do that. I'd say the Fifth and Seventh Circuits are the circuit decisions that are cited by the cases that are following the law. As far as this abuse of process claim, the court, Judge Toronto, again, correctly pointed out, irrespective of whether Colorado law would consider that to be a tort or not, or what the Colorado Supreme Court might think, it comes down to due process. It essentially comes down to Calder and Dudenhoff, as this court should follow Dudenhoff. I think the Minor decision from the District Court in Utah provides good insight into the Dudenhoff case. And again, Minor is directly on point. In Minor, the court said, and I quote, such service in and of itself is an inadequate contact with the State of Utah to create specific jurisdiction over Rubin. And the reasons for that are multiple. First of all, it doesn't meet the minimum contact test. The contacts are too attenuated. Secondly, over and above purposeful availment, and it doesn't satisfy purposeful availment either. But other than minimum contacts, purposeful availment, it doesn't apply. It also doesn't satisfy the expectations of the parties, and it would be unjust to hail someone into court simply because they filed a lawsuit in a different state. That's also one thing that was... Can I ask something? Yes. If the Texas case had actually gone to Discovery, for example, you would expect, wouldn't you, that you would be doing some Discovery in Colorado where Safeco's headquarters is? Yes, Your Honor. I guess I keep coming back to the perhaps special content of the lawsuit that gave rise to all of this, that it was about, in part, in substantial part presumably, activities outside Texas, including activities in Colorado, that the litigation defense would, to a significant extent, actually take place in Colorado. Obviously the trial wouldn't, but the bulk of litigation expense is pretrial. Why don't those things begin to give some real physical heft to the contact of this lawsuit with Colorado in a way that perhaps wasn't true in Wallace? Well, in part because they never occurred. The case didn't get to Discovery. But they would have occurred. Right, but the case was dismissed before this suit was filed. But I still don't see, I mean, when you talk about an abusive process claim, for example, it requires some corrupt process even to be actionable. And that's, here, if you're just talking about the normal processes of a court, the service of a summons, the taking of a deposition pursuant to a subpoena, those aren't actionable anyway. There's nothing wrongful about those things. But in terms of the, if you're talking about the effects test, I mean, I guess what I'd say is what you said would be applicable in the Wallace case, what you said would be applicable in the Allred case, Fifth and Seventh Circuits, what you said would also be applicable in the Minor case from the District of Utah. The rule I think that the court's suggesting would be that if I file a lawsuit against someone, I'm in State A, they're in State B, that should satisfy the effects test because there's a lawsuit perceived that would be burdensome in State B. I think that's at least implicitly rejected by all of those courts, including this court's sister courts, because that would be applicable with any lawsuit. And the court, lastly, on the certification, it sounds like that space code is somewhat backed away from that. I believe it was Judge Lloyd that hit it right on the head, or maybe it was Judge Chen, excuse me, if it was. But it is a question of due process, and the Colorado Supreme Court, frankly, if it was faced with it,  which is from the District of Colorado, and directly on point, but in any event, there's no need to certify a question of due process to a state court. This court is certainly in the best position to do that. Thank you. Thank you, Mr. Edmonds. Mr. Keough has a little rebuttal time. Two minutes. Thank you, Your Honor. I just have a couple of points in response. I guess, for one, the characterization of the Viché case that it doesn't say explicitly that service of process is enough to establish jurisdiction, that's incorrect. I think it's quoted explicitly in our brief. And then this point about the service of process being, I don't know how you commence a case without serving process, that these days they don't get the service. I'm sure that that's probably not true. But we're talking about basically an incontestable fact here. Have you actually seen the document that's listed on PACER, the return of service? Yes, it's listed in there. From what I've told, the president of the company received service when it was done in 2009 at our office. Also, to go back to the point that Judge Taranto made about Texas versus Colorado activities, there will be no litigation activity in Texas in terms of discovery because we have no operations in Texas. All of our records are going to be in our Denver headquarters. All of the people who would have to be deposed are in Denver. There isn't anybody in Texas to talk to, really. Those were the only points I have. If the panel has any questions, otherwise... Thank you, Mr. Hewitt. The case will be taken under revising.